IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN RADECKI and
AMY RADECKI,

                    Plaintiffs,                    OPINION AND ORDER

    v.                                                           20-cv-814-wmc

KATHERINE DAHL,
NATIONAL FIRE & MARINE INSURANCE COMPANY,
NATIONAL FIRE & MARINE INSURANCE COMPANY,
as administered by MedPro Group Company,
IRONSHORE SPECIALTY INSURANCE COMPANY,
GUNDERSEN CLINIC PROFESSIONAL LIABILITY
INSURANCE PLAN and GUNDERSEN CLINIC LTD.,

                    Defendants.

---

Plaintiffs Amy and Brian Radecki lost custody of their teenage daughter, LR, after a Minnesota state court concluded that their home environment was unsafe for LR. The state investigation and court proceedings had been opened after LR reported to her therapist, defendant Katherine Dahl, that her father had sexually assaulted her as a child. Plaintiffs contended in state court that LR's memory of an alleged sexual assault was not only false, but the result of Dahl's negligent and irresponsible use of hypnotic techniques on LR. Without finding "clear and convincing" evidence that LR had been physically or sexually abused, the state court agreed the Radeckis were unable to provide the care that LR required in a "Petition for Child in Need of Protection or Other Services" ("CHIPS") proceeding and granted the county custody of LR until emancipation. In this civil lawsuit, plaintiffs are now suing Dahl and her former employer, Gundersen Clinic Ltd., as well as their insurers, for medical malpractice, failure to obtain informed consent and negligent infliction of emotional distress.

Pending before the court is defendants' motion for summary judgment, asserting complete immunity for reporting child abuse or neglect under Wis. Stat. § 48.981(4). (Dkt. #109.) More specifically, defendants contend that because all of plaintiffs' claims allegedly arose out of Dahl's *report* of LR's assertions that her father, Brian, abused her, complete statutory immunity applies. Although the court agrees that Dahl is immune from any claim that her *reporting* was negligent or damaged plaintiffs, there are genuine disputes of material fact regarding whether all of plaintiffs' alleged injuries were caused by Dahl's reporting or by other negligent actions, including her treatment of LR and alleged failure to obtain informed consent from plaintiffs before using hypnosis on their daughter LR. Therefore, the court will grant summary judgment in part as to any claim arising out of Dahl's reporting of abuse or neglect, but will deny in part with respect to any negligence claim for acts not arising directly out of Dahl's reporting abuse or neglect.

UNDISPUTED FACTS[1]

**A. LR's Treatment and Initial Disclosures of Abuse**

In 2014, plaintiffs Brian and Amy Radecki lived in Minnesota with their daughter, LR. Over concerns that LR was depressed and cutting herself, Amy referred LR, who was 12 years old at the time, to therapy with defendant Katherine Dahl in April 2014. Dahl is a licensed clinical social worker who was working for defendant Gundersen Clinic, Ltd. in Wisconsin at the time. Dahl provided care to LR at Gundersen Lutheran Medical Center in La Crosse, Wisconsin.

---

[1] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses.

2

In the fall of 2015, LR was hospitalized for suicidal thoughts. During her several-day hospitalization, LR further told providers that her cousin had sexually abused her, and in the past, her father had physically abused her. No action was taken on this disclosure, however, because Houston County apparently concluded that there was insufficient information to pursue a child protection investigation.

A couple of months later, however, defendant Dahl reported to the Houston County Department of Human Services on January 21, 2016, that LR had disclosed previous sexual abuse by her cousin. LR was then interviewed by a Houston County Department of Human Services social worker, but the matter went no further at that time because neither LR nor plaintiffs wanted to cooperate with an investigation.

During the summer of 2017, Dahl was using cognitive behavioral therapy techniques with LR, that may or may not have included hypnosis.[2] In August 2017, Dahl made another report to the Houston County Department of Human Services. This time, she reported LR's disclosure that her father, Brian Radecki, had physically abused her, by hitting her in the face and pushing her with sufficient force to create a dent in the wall. Still, the department chose not to pursue this disclosure, however, allegedly because the county did not want the Radeckis to prohibit LR from continuing therapy with Dahl.

---

[2] Plaintiffs assert that the techniques Dahl used changed in 2017 to include "hypnosis," while defendants assert that Dahl used the same standard cognitive behavioral therapy techniques throughout her treatment of LR. For purposes of the outcome of the summary judgment decision, however, the dispute is immaterial.

3

### B. LR's Later Disclosure of Brian Radecki's Alleged Rape

On October 23, 2017, LR further told her high school counselor that she had a "memory or dream" of her father raping her in a bunk bed as a young girl, but that she was not sure whether it actually happened. Later that same day, LR saw Dahl for outpatient behavioral health therapy, and again reported having a memory or dream of her father raping her in a bunk bed as a girl, and having concerns about whether the memory was true. LR made a series of disclosures, the timing of which is unclear from the record at this point. By no later than the next day, LR also told at least one friend about a memory of this rape, although it is unclear from the record how many or when other disclosures were made, and whether any of them happened before or after LR spoke with Dahl.

Both Dahl and LR's high school counselor notified Houston County Human Services of LR's reported memory of her father's sexual abuse on October 23, but it is not clear from the records which person made the first of those reports.

### C. State Court Child Protection Proceedings

A few days later, the Houston County Human Services Department filed a CHIPS petition in state court, contending that LR needed protection or services based on two, separate reports of LR's memory of her father raping her. As a result of the CHIPS petition, LR was immediately removed from the Radecki household and placed into foster care.

The CHIPS proceeding concluded in March 2018, with the state court finding that, although it had not been proven by "clear and convincing" evidence that LR was a victim of physical or sexual abuse, it had been proven that LR's parents were unable to provide

her necessary care. As a result, the county was granted custody of LR at age 16, and she never again returned to live with plaintiffs.

OPINION

In this lawsuit, plaintiffs claim that they were injured as a result of defendant Dahl's: (1) negligent treatment of LR, which fell below the relevant standard of care; (2) failure to obtain informed consent before performing hypnosis on LR; and (3) negligent infliction of emotional distress. As for their standing to pursue the claims, plaintiffs point out that the Wisconsin Supreme Court has recognized third-party negligence claims, brought by parents, against a therapist who allegedly caused the creation or reinforcement of false memories of sexual abuse in their child. *See Sawyer v. Midelfort*, 595 N.W.2d 423, 433 (Wis. 1999) ("We are quite confident that negligent treatment which encourages false accusations of sexual abuse is highly culpable for the resulting injury.") (quoting *Hungerford v. Jones*, 722 A.2d 478, 480 (N.H. 1998) ("It is indisputable that 'being labeled a child abuser [is] one of the most loathsome labels in society' and most often results in grave physical, emotional, professional, and personal ramifications.")); *Johnson v. Rogers Mem'l Hosp., Inc.*, 700 N.W.2d 27, 30 (Wis. 2005) (holding that "public policy [can] require[ ] that the therapist-patient confidentiality and privilege give way to *Sawyer* third-party negligence claims").[3]

---

[3] Both sides argue or assume that Wisconsin law governs all of the claims and defenses at issue, so the court has done the same. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002) ("[T]here's no discussion of choice of law issues, and so we apply the law of the forum state.").

For the purposes of summary judgment, defendants do not dispute the underlying merits of plaintiffs' negligence claims. In particular, they do not challenge plaintiffs' allegations that: Dahl's treatment was below the standard of care for her profession; Dahl was inadequately trained to perform the type of treatment she gave LR; or Dahl's treatment created or contributed to LR's memory of sexual abuse. Instead, they contend that all of plaintiffs' claims are barred by the absolute immunity afforded by Wis. Stat. § 48.981(4). That statute provides immunity from civil or criminal liability to any person arising from that person's "[p]articipat[ion] in the making of a report" regarding a suspicion of child abuse or neglect. Wis. Stat. § 48.981(4). That statute further mandates that certain individuals, including mental health professionals and social workers like Dahl, report suspected child abuse or neglect if there is reasonable cause to suspect that a child has been abused or neglected. Wis. Stat. § 48.981(2)(a). Thus, defendants argue, because Dahl was a mandatory reporter and she was complying with the statute reporting LR's allegation of sexual assault, she is immune from civil liability.

The court agrees with defendants that the immunity statute would bar plaintiffs' claims if plaintiffs were claiming that Dahl acted negligently by reporting LR's allegation against her father. However, plaintiffs have expressly forsworn any claim based on Dahl's reporting of LR's disclosures to the Houston County Department of Human Services. (Dkt. #123, at 7–9 ("Nowhere do Plaintiffs claim that Defendant Dahl is negligent for filing the CPS complaint regarding the alleged rape"; and "Plaintiffs are not asking for 'liability' as a result of the mandated report. Plaintiffs are asking for liability as a result of . . . Dahl's negligent treatment.").) Further, in both their pleadings and brief, plaintiffs only seek damages caused by Dahl's alleged negligent treatment of LR and failure to obtain

6

informed consent, which allegedly caused LR's "false memory." Further, plaintiffs' expert opined that "Dahl's negligent and controversial recovered memory therapy" methods and practices "were a substantial factor in damaging the plaintiffs by producing emotional pain and suffering as well as expensive, stressful litigation defending the CHIPS case." (Dkt. #127-2, at 8; *see also id.*, at 59 ("Dahl was using these memory contaminative mixing-imagination-memory techniques on LR without any semblance of informed consent.").)

Nevertheless, defendants argue that all of the specific damages claimed by plaintiffs "have a direct causal relationship with Dahl's reporting and the subsequent CHIPS Case." (Dkt. #134, at 2.) For example, plaintiffs seek to recover from Dahl their attorney's fees and expert witness expenses incurred during the CHIPS proceeding. (Dkt. #123, at 8 (plaintiffs seek to recover damages deriving from the CHIPS case, including "the cost of defense, business losses, and some of the intangible losses").) Defendants argue that plaintiffs would not have incurred those costs but for Dahl's reporting of LR's sexual assault allegations to the court.

However, there are genuine, material factual disputes regarding whether the CHIPS case would have proceeded even without Dahl's report. Specifically, because LR's high school counselor reported the same sexual assault allegations on the same day as Dahl did, plaintiffs *may* be able to prove that the CHIPS proceedings would have occurred regardless of Dahl's report. Of course, this may undermine plaintiffs' claim to damages arising out of these proceedings, unless plaintiffs can prove LR's reports of sexual abuse to her counselor were the result of false memories negligently induced by Dahl. Regardless, plaintiffs are also seeking damages apart from expenses incurred during the CHIPS proceeding, including emotional pain and suffering, (*see* dkt. #123, at 9 ("The largest damage is likely

7

the pain and suffering from Plaintiffs' daughter [LR] believing that her father raped her."); dkt. #112-4, at 6–7 (claiming lost income or lost earnings).) Thus, the court cannot conclude on the record at summary judgment that all of plaintiffs' damages were caused by Dahl's compliance with her mandatory reporting duties.

The cases cited by defendants are not to the contrary; instead, all of those cases involve challenges to claims based on either (1) an individual's reporting under Wis. Stat. § 48.981 or (2) the consequences of such reporting. *See Drake v. Huber*, 582 N.W.2d 74, 76 (Wis. Ct. App. 1998) (claim that a report of child abuse was not made in good faith); *E.S. by D.S. v. Seitz*, 413 N.W.2d 670, 671, 673 (Wis. Ct. App. 1987) (claim that psychologist's investigation and reporting of alleged sexual assault was negligent); *In re Paternity of G.L.G.*, 2022 WI App 55 ¶¶ 53–54, 2022 WL 2240100 (unpublished) (challenge to court's admission of child abuse reports in a custody case); *State v. Ziehr*, 2016 WI App 18, ¶ 1, 367 Wis. 2d 350, 876 N.W.2d 179 (unpublished) (appeal by daycare provider of criminal conviction for failure to report suspected child abuse). In contrast to these cases, plaintiffs' claims here turn on whether Dahl's actions during therapy with LR meet the elements of medical negligence, failure to obtain informed consent and negligent infliction of emotional distress—not on Dahl's motive or the accuracy of her reporting. Moreover, none of these cases address the relevant question at summary judgment in this case: whether plaintiffs' claims and damages sought are causally related to Dahl's mandatory reporting obligation or some independent tort.

Defendants also argue that the statutory language of § 48.981(4) provides further policy-based support for Dahl's immunity argument because "the immunity provided under this subsection does not apply to liability for abusing or neglecting a child or for

8

abusing an unborn child," Wis. Stat. § 48.981(4)(b), suggesting that a reporter only loses her immunity if she engages in egregious conduct, such as child abuse. This argument also misses the mark, however, because it relies on an *exception* to liability for reporting, and again, plaintiffs are not contending that Dahl should be liable for reporting. Moreover, there are good policy reasons for permitting plaintiffs to pursue independent medical negligence claims even where a medical provider may have also complied with mandatory reporting requirements. As the Wisconsin Supreme Court recognized: "no utility can be derived from protecting careless or inappropriate therapists and their practices." *Johnson v. Rogers Mem'l Hosp.*, 700 N.W.2d at 42 ("[When] 'negligent therapy' is left to flourish within the confines of the therapist-patient relationship, . . . [t]he costs are simply too severe: the therapist is allowed to continue negligently 'treating' others, the patient remains disillusioned by the falsehoods, and the accused suffers the torment of being branded a child-abuser.").

In sum, while plaintiffs are barred from asserting any claim alleging that Dahl was negligent in reporting or otherwise liable for reporting or failing to comply with her reporting duties, plaintiffs actual claims for negligence, failure to obtain informed consent, and negligent infliction of emotional distress, are not barred under Wis. Stat. § 48.981(4). Accordingly, defendants' motion for summary judgment must be denied. That being said, plaintiffs will be precluded from presenting evidence or argument at trial that Dahl was negligent in investigating and reporting LR's allegations to the Houston County Department of Human Services. In addition, if the evidence develops at trial that the

CHIPS proceeding would not have occurred without Dahl's report, plaintiffs will be precluded from seeking any damages for injuries relating to that proceeding.[4]

ORDER

IT IS ORDERED that defendants' motion for summary judgment (dkt. #109) is DENIED.

Entered this 24th day of April, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[4] As noted, this is a two-edged sword for plaintiffs, since any remaining question as to plaintiffs' liability as to the costs of defense to the CHIPS proceedings will turn on also proving that defendants' liability caused others to report or otherwise initiate those proceedings. The court also expects the parties to address in their motions *in limine*, whether plaintiffs' claims for damages arising from the CHIPS proceeding are barred by any preclusionary principles or the *Rooker-Feldman* doctrine, given that plaintiffs appear to be seeking damages that occurred due to a state-court decision, which are ordinarily not recoverable in a subsequent federal court proceeding. *Harold v. Steele*, 773 F.3d 884, 885 (7th Cir. 2014).