IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN RADECKI and
AMY RADECKI,

                Plaintiffs,             OPINION AND ORDER

v.

                                            20-cv-814-wmc

KATHERINE DAHL,
NATIONAL FIRE & MARINE INSURANCE COMPANY,
NATIONAL FIRE & MARINE INSURANCE COMPANY,
as administered by MedPro Group Company,
IRONSHORE SPECIALTY INSURANCE COMPANY,
GUNDERSEN CLINIC PROFESSIONAL LIABILITY
INSURANCE PLAN and GUNDERSEN CLINIC LTD.,

                Defendants.

---

In this case, plaintiffs Amy and Brian Radecki have sued defendants Katherine Dahl, her employer, Gundersen Clinic, and their insureds for negligence. Specifically, plaintiffs claim that, while providing needed behavioral health therapy, Dahl negligently created a false memory in their daughter of being raped by her own father. With trial now scheduled for July 10, 2023, this order will address the parties' motions in limine in advance of the Final Pretrial Conference ("FPTC") scheduled for June 29, 2023.

OPINION

**A.    Plaintiffs' Omnibus Motion in Limine (Dkt. #148)**

    **1.    Motion to limit defense experts each to one of three specified topics**

Plaintiffs argue that the opinions of at least four defense retained experts (Dr. Melba Vasquez, Dr. Christine Courtois, Judith Goodman, Dr. Charles Brainerd), and possibly five (Eric Sievers) give needlessly cumulative opinions regarding the standard of care.

Accordingly, they move to limit each expert to one of the following topics: (1) whether Dahl's care to LR in 2017 was negligent; (2) whether Dahl used recovered memory therapy; and (3) whether Dahl used hypnosis or hypnotic-like procedures with LR in 2017. Defendants respond that each defense expert brings unique qualifications on complicated behavioral health therapy and memory science issues, but this does not address plaintiffs' and the court's shared concern that their testimony may be needlessly cumulative under Fed. R. Civ. P. 403, or plaintiff's legitimate concern that the jury may be inclined to defer to "counting heads."

    As to the latter, the court will consider giving a stronger curative instruction than typical to dissuade the jury from explicitly or implicitly giving undue weight to the number of experts testifying for either side.  As to the former, defendants have delineated the experts' different perspectives and fields of expertise in their response.  (Dkt. #188, pp. 7-19.)  That being said, the court will need a clearer proffer as to how defendants intend to avoid substantial, needless overlap in their experts' reports as to the history of defendant Dahl's actual treatments and criticisms of Dr. Barden's opinions on that treatment, particularly with respect to the opinions of Drs. Courtois and Vasquez, as well as Ms. Goodman.  Further, defendants need to address whether the plaintiffs' suggested limits with respect to three, specific topics are meaningful areas of substantial overlap.  Thus, the court will RESERVE on plaintiffs' MIL #1 until the FPTC, as well as on further Rule 403 objections as to cumulative evidence if necessary during trial.

    2.    **Motion to exclude evidence on specific topics as unduly prejudicial**

Plaintiffs move the court to exclude the following evidence as irrelevant and unduly

prejudicial: (1) plaintiffs are enrolled in medical assistance; (2) defendant Dahl has a child with special needs; (3) Brian Radecki and Police Chief Douglas Stavenau's interactions unrelated to any alleged criminal conduct, as well as "Chief Stavenau's characterizations of Brian"; and (4) Brian Radecki's comments about people's physiques.

This motion will be GRANTED, DENIED, and RESERVED IN PART. First, defendants concede that plaintiffs' public medical assistance is irrelevant and should not be admitted, particularly because plaintiffs have not claimed damages related to any medical treatment costs. Thus, plaintiffs' motion is GRANTED in that respect.

Second, as for Dahl's daughter with special needs, defendants have not explained persuasively how information about Dahl's personal life or background, including her schedule or other commitments, is relevant except as general background in Dahl's description of herself. Thus, while the court will not exclude *any* evidence of the special needs of Dahl's daughter as part of Dahl briefly describing herself and interests, that is as far as this testimony will extend.

Third, defendants assert that Chief Stavenau's interactions with, and characterizations of, Mr. Radecki go to his reputation in the community, which defendants argue is relevant for Brian Radecki's damages for the "loss of his reputation in the community." While Brian Radecki is seeking "[l]ost income from his business" according to the verdict form submitted (*see* dkt. #176), he does not mention his personal reputation in the damages he seeks. As such, defendants have not explained why Chief Stavneau's opinions of or interactions with Brian Radecki are likely to be relevant at this trial *or* why this testimony is not inadmissible character evidence in any event. Thus, this portion of

3

plaintiffs' MIL #2 is RESERVED so the court can discuss with the parties at the FPTC any potential relevance of Chief Stavneau's testimony on these subjects to Brian Radecki's claim of lost income from his business.

Fourth and finally, defendants claim to lack knowledge of any comments by Brian Radecki about people's physiques, but curiously also asserts reasons why it might be relevant that Mr. Radecki made such comments, including the effect on LR and her eating disorder. (*See* Dkt. 183, at 3.) Absent a specific proffer *by defendants* at the FPTC of any relevant evidence of this kind, the court will GRANT this aspect of plaintiffs' MIL #2.

### 3. Motion to exclude evidence regarding the quality of care that Defendant Dahl gave to LR prior to January 1, 2017

Plaintiffs argue that Dahl's care of Radecki before 2017 is not relevant because they are only challenging the care that she provided *during* 2017. The court agrees with defendants that Dahl's treatment and relationship with LR beginning in 2014 may be relevant for context and to subsequent treatment decisions Dahl made in 2017, particularly with respect to the jury's consideration of defendant Dahl meeting the standard of care as a therapist. However, defendants' move in their MIL #12 to "[p]reclud[e] Dr. Barden from criticizing Katherine Dahl's treatment of [LR] prior to August 2017." (Dkt. #163, at 2.) To the extent that Barden has made criticisms of Dahl's treatment during this earlier period in his report, defendants cannot use Dahl's treatment before 2017 as both a sword and a shield. Accordingly, because it is not clear where the parties agree and disagree on this class of evidence, the court will RESERVE on plaintiffs' MIL #3 until the FPTC.

4

4.      **Motion to exclude documents that were subpoenaed by plaintiffs for LR's deposition but which she failed to produce**

Plaintiffs assert that LR brought *no* documents with her to her deposition, despite being compelled to do so by a subpoena. As a result, plaintiffs seek to preclude "any party other than Plaintiffs" from using "any of the documents" that LR failed to produce. (Dkt. #148, at 2.) This appears to be a matter that should have been addressed during the discovery phase of this case. Regardless, the proffer of any documentary evidence into the record is best addressed by specific objection and ruling by the court during the FPTC. Thus, plaintiffs' MIL #4 will be RESERVED subject to the following general observations.

As an initial matter, neither party may introduce documents that LR failed to provide to all parties unless subsequently disclosed to both sides as required by the Federal Rules of Civil Procedure. Second, the parties may introduce documents that LR provided to all parties, whether in response to subpoena or otherwise. Finally, if a party obtained relevant documents independent of LR, they may be introduced so long as the documents were timely disclosed under the Federal Rules of Civil Procedure.

5.      **Motion to exclude evidence of the net worth, assets, or income of Brian Radecki's father, John Radecki**

Plaintiffs move to exclude evidence of the net worth of John Radecki, plaintiff Brian Radecki's father, as irrelevant and unduly prejudicial. Although defendants argue that John Radecki's wealth would be relevant to rebut evidence that the Radecki's incurred financial hardship as a result of the CHIPs proceeding, delving into John Radecki's net worth needlessly risks creating an irrelevant sideshow and wasting the jury's valuable time especially since plaintiffs no longer appear to be seeking damages for the costs of the CHIPS

proceedings. (Dkt. #176, at 3). That being said, if plaintiffs somehow open the door to this evidence, defendants may seek reconsideration of this ruling in a sidebar at trial. Absent that, plaintiffs' MIL #5 will be GRANTED.

> 6. **Motion to exclude evidence regarding Brian Radecki's criminal charges on two occasions during his lifetime**

Plaintiffs argue that any criminal convictions Brian had are not relevant to this case. Defendants do not oppose this motion in limine. Thus, plaintiffs' MIL #6 will be GRANTED.

> 7. **Motion to exclude opinions whether Brian and/or Amy Radecki acted appropriately as LR's parents, including their reactions to the alleged abuse by S.**

Plaintiffs' seek an order excluding opinions as to whether Brian or Amy Radecki acted appropriately as LR's parents, particularly with respect to their reactions to alleged abuse of LR by S (LR's cousin). Plaintiffs argue that evidence of their responses after they first were told about abuse by S to LR could be used to create an inappropriate inference, such as that Brian was concerned that his alleged rape of LR would be uncovered.

Defendants oppose the motion, arguing that such opinion evidence is relevant to the Radeckis' claim for damages, including for their attorneys' fees, expenses and loss of business income related to the CHIPS proceedings. Defendants also argue that without evidence regarding the Radeckis' response to LR's past reports of sexual abuse, the jury would get an incomplete picture of the decision of the state court's decision to remove LR from the Radecki house.

Although plaintiffs appear to have abandoned claims to fees and costs related to the

CHIPS proceedings, the court agrees and will DENY plaintiffs' MIL #7. First, within reason and the bounds of prejudice, how Brian or Amy Radecki generally acted as LR's parents may be relevant to the reasonableness of methods used by Dahl during her therapy sessions with LR, including with respect to how they acted in response to hearing of S's inappropriate touching, as that may be relevant in evaluating the methods Dahl used for unlocking suppressed memories if any. However, in so ruling, the parties should not interpret this as permitting *all* evidence as to the Radeckis' parenting, as this trial is *not* a retrial of the CHIPS proceeding. The jury will *not* be asked to second guess the conduct or outcome of those proceedings nor why LR was removed from the Radecki's home.

8. **Motion to exclude any actions that occurred in the Houston County Court or Houston County Social Services after March 1, 2018, related to the Radecki family**

The CHIPS court issued its written order on March 1, 2018, and Houston County was granted custody of LR as a result. Later that year, on September 14, 2018, Houston County Department of Human Services filed a petition for permanent custody of LR, which resulted in a trial in November of 2018. A written order dated December 14, 2018, followed, which held that granting permanent custody of LR to Houston County Department of Human Services was in her best interest. Further, until March 14, 2018, Dahl continued to provide outpatient behavioral health therapy to LR, at which point LR transitioned her treatment to Dr. Sarah Long, a psychologist at Gundersen Health System. Plaintiffs argue that people's opinions and evaluations expressed after March 1, 2018, as part of this permanent placement process and determination that LR should be removed from the Radeckis' home, are not relevant because plaintiffs are not asking for damages

7

based on loss of society and companionship with LR.

Nevertheless, defendants oppose plaintiffs' motion. Defendants principally assert that the evidence sought to be excluded by the motion is too broad and undefined. More specifically, defendants argue that the substance and outcome of the CHIPS proceeding and subsequent permanency trial undermine plaintiffs' claim for emotional distress damages and show that the Radeckis' objective was to clear Brian Radecki's name of criminal wrongdoing, rather than an attempt to learn more about how to help LR. (*See* dkt. 185, at 3–4.)

The court will RESERVE on plaintiffs' MIL #8 pending further discussion during the FPTC. On one hand, defendants' concern that this medical malpractice case could end up being a second bite at the apple for the Radeckis with respect to the CHIPS proceeding seem farfetched, given that the issues, posture, and parties are distinct. Indeed, the placement of LR based on facts after March 1, 2018, should not have any bearing on the liability for medical negligence before that date. On the other hand, plaintiffs have stated in other papers that Brian Radecki's loss of business income should extend until the "*end of 2018*," instead of March 1, 2018." (*See* dkt. #201, at 5 (emphasis added).) Thus, the court will discuss this category of evidence with the parties at the FPTC, as well as possible adoption of brief, stipulated facts as to the CHIPS proceedings generally and curative instructions as to their limited relevance, if any.

9. **Motion to exclude Dr. Sarah Long's opinions about the care rendered by Dahl to LR or comparing her care to Dahl's care of LR**

Dr. Long was LR's subsequent treatment provider at Gundersen. Plaintiffs allege

8

that the parties agreed in exchange for plaintiffs not naming Dr. Long as a defendant, she would not give opinions about either: (1) the care rendered by Dahl, or (2) a comparison of Dr. Long's care with that of Dahl. Defendants do not oppose the motion, so the court will GRANT plaintiffs' MIL #9 as unopposed.

B.       **Defendants' Motions to Exclude Testimony**

    1.       **Motion to preclude undisclosed expert testimony (dkt. #136)**

Defendants move to exclude plaintiffs from offering undisclosed expert testimony for the first time at trial. Defendants also seek attorneys fees for the motion.

As a starting principal, Federal Rule of Civil Procedure 26(a)(2)(D)(ii) requires expert disclosures to include "evidence [] intended solely to contradict or rebut evidence on the same subject matter identified by [another party's expert disclosures]." Federal Rule of Civil Procedure 37(c)(1) further provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Finally, Rule 37(c)(1)(A) grants the court authority to "order payment of the reasonable expenses, including attorney's fees" caused by a failure to comply with Rule 26. Fed. R. Civ. P. 37(c)(1)(A).

Here, plaintiffs retained Dr. Christopher Barden as their primary expert, and on March 12, 2023, they also identified Dr. Barden as their sole rebuttal expert. (Dkt. #137, at 2 (citing Sundelius Dec. ¶ 4, Ex. A).) Plaintiffs' rebuttal expert report deadline was March 21, 2023, but no report was filed. They now argue that it would have been cost prohibitive for Barden to provide rebuttal to all of defendants' experts' opinions.

9

Nonetheless, they suggest, Barden should be permitted to provide rebuttal testimony at trial to respond to opinions provided by defendants' experts.

In contrast, defendants argue that permitting Dr. Barden to provide rebuttal opinions at trial would be impermissible "trial by ambush." (*Id.*, at 5–6.) Defendants also argue that because they have requested Dr. Barden be sequestered at trial (*see* defendants' MIL #13), he would not be able to rebut any new testimony at trial anyway. Considering the parties' respective positions, the court will GRANT, DENY AND RESERVE IN PART defendants' MIL #1. Again, no party's expert may testify as to subject matters or opinions that are not included in their expert reports. However, this court does not generally require that expert witnesses be sequestered, and Dr. Barden, as well as the other experts, may provide rebuttal testimony at trial provided the testimony concerns topics and opinions already included in timely-disclosed reports. Because the parties have not identified any particular topic on which Barden should or should not be permitted to address, the court cannot provide more specific rulings at this stage, but will discuss with both parties as to how to ripen such objections at trial. Finally, defendants' request for attorney fees is DENIED as premature, at best.

C. **Defendants' Motions in Limine**

1. **Motion to preclude plaintiffs from introducing documents, records or evidence not previously produced in discovery (dkt. #152)**

Defendants seek to exclude documents, records, or evidence not previously produced in discovery. Parties have a duty to provide fulsome initial disclosures and responses to discovery requests, and to supplement those responses if new material

becomes available. *See* Fed. R. Civ. P. 26(a) & (e)(1). Plaintiffs do not oppose the substance of the motion, agreeing to "exclud[e] text messages, emails or social media messages that have not already been produced by witnesses who were asked for such documents during written or deposition discovery for both sides." (Dkt #181, at 1–3.) Thus, although unnecessary, this court GRANTS defendants' joint MIL #1 as unopposed against both sides.

### 2. Motion to preclude plaintiffs from calling witnesses at trial that have not been timely identified (dkt. #153)

Similarly, defendants seek to preclude plaintiffs from calling at trial any witness who has not been timely and properly disclosed. Defendants further clarify their motion is meant to apply to both expert witnesses (of which plaintiffs have named only one) and fact witnesses.

The parties apparently agreed upon an April 1, 2023, deadline for identifying potential, non-expert witnesses, and plaintiffs do not oppose the motion "generally," except to request that it apply to both parties and that Sean McGuire, who is on plaintiffs' witness list of June 4, 2023 (dkt. #169, at 2) not be excluded by this order. (Dkt #181.) There is no issue as to this motion both ways, but plaintiffs assert that Sean McGuire "heard about the allegation that Brian Radecki raped [LR] independent of any knowledge about the [child protection] filing or CHIPS case," and almost immediately after plaintiffs' counsel "heard about this and spoke to Mr. McGuire" in mid-May, he informed defendants' counsel of the intent to call Mr. McGuire as a witness as well as offered to produce him immediately. "To date no request has been made." (Dkt #181, at 3.)

11

This court will GRANT defendants' joint MIL #2 as to preclude both parties from calling witnesses that have not been timely disclosed.  At this point, the court also declines to make a carveout for Sean McGuire, who was plainly disclosed late.  Sean McGuire is the ex-husband of Tina McGuire, (dkt. #182, at 2), who is "an employee of [LR's] school and friend."  (Dkt. #125, ¶ 22.)  Moreover, Tina McGuire testified at the CHIPS trial on January 22, 2018.  (Dkt. #135-1.)  Thus, plaintiffs have not articulated a reason why they could or should not have known about Sean McGuire to timely disclose him to defendants.  Nevertheless, the court will allow plaintiffs to make a further proffer on this subject at the FPTC.

3. **Motion to preclude any new or additional opinions not previously disclosed by plaintiffs' expert Dr. Christopher Barden (dkt. #154)**

Defendants' joint MIL #3 appears to be duplicative of their motion to preclude undisclosed expert testimony, and as such is already resolved as set forth above.

4. **Motion to preclude witnesses from testifying regarding the credibility of any other witness (dkt. #155)**

Defendants seek a motion in limine to preclude any witnesses from testifying regarding the credibility of other witnesses.  (Dkt. #155, at 1–2 (citing *Goodwin v. MTD Prod., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000) (holding experts cannot testify as to credibility)).)  As an example of a question that would pertain to credibility, and thus, should be excluded, defendants refer specifically to "whether any witness 'believes' that Brian Radecki sexually abused [LR]?"  (*Id.*, at 4.)

While plaintiffs purport to oppose defendants' joint MIL #4 in part, they merely assert that evidence regarding another person's education or knowledge should not be

12

excluded.  More specifically, plaintiffs state that they intend to point out Dahl was "unaware" of Dr. Elizabeth Loftus, which their expert Barden describes as a "premier expert in the United States regarding memory." (Dkt. #181, at 4.)  Whether that is a winning criticism or not, it does not appear to be encompassed within defendants' joint MIL #4.

Accordingly, the court will GRANT defendants' joint MIL #4, and opinion testimony as to any witness's credibility is excluded. As to questions about Dahl's knowledge of memory literature and studies, neither appears to elicit opinion testimony regarding her credibility.  Thus, plaintiffs may attempt to establish who Dr. Elizabeth Loftus is (Dr. Barden discusses her work in his report, dkt. #128), and question Dahl on her awareness of Dr. Loftus.

5. **Motion to preclude any lay witness from providing expert testimony (dkt. #156)**

Defendants seek to preclude any lay witness from providing testimony on the standard of care and causation issues in this case.  Federal Rule of Evidence 701 provides that lay witness testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge . . . ."  Accordingly, this motion will be GRANTED, DENIED and RESERVED IN PART.

As defendants point out, lay witnesses cannot provide opinions about whether Dahl's behavioral health treatment fell below the standard of care, as such opinions fall outside a lay witness's expertise.  However, defendants further designate as "expert opinions" Amy Radecki's testimony that: (1) she did not believe Brian sexually assaulted

13

LR "immediately upon hearing it," and (2) she came to that same conclusion again after meeting Dr. Barden. (*See* Dkt. #119, at 125–26.) Since these opinions do not depend on scientific, technical, or other specialized knowledge, the court will reserve as to their admissibility and relevance. Finally, the court notes that the principle of exclusion defendants seek is already encompassed by Federal Rules of Evidence 701–703. To the extent either side believes a lay opinion should be excluded under these rules, they may object at trial.

> 6. **Motion to preclude Dr. Christopher Barden and any other witness from commenting on defendant Katherine Dahl's behavior or psychological state when she testified at the CHIPS case (dkt. #157)**

Defendants seek an order that will preclude any witnesses from commenting or testifying about Katherine Dahl's behavior or psychological state while testifying in the CHIPS proceeding. Specifically, defendants refer to Dr. Barden's testimony, including that Dahl "complained -- unethically and unprofessionally and with emotion[al] instability from the witness stand." (Dkt. #128, at 43.) Plaintiffs do not oppose this motion "as it relates only to her behavior while on the witness stand." (Dkt #181, at 5.) However, plaintiffs do not suggest that Dahl's behavior in other contexts at the CHIPS trial might be material to this case; thus, plaintiffs appear to be drawing a distinction without a difference. Regardless, defendants' joint MIL #6 is clearly directed to Dahl's behavior and state of mind "when she testified at the CHIPS case," which the court GRANTS. (Dkt. #157.)

7. **Motion to preclude Dr. Barden from testifying that Katherine Dahl was the worst or most incompetent therapist (dkt. #158)**

Plaintiffs seek to prohibit Dr. Barden from testifying that Katherine Dahl was the "worst" or "most incompetent" therapist he has encountered. In particular, defendants point to Dr. Barden's deposition testimony in which he describes Dahl as "an extremely misinformed and uninformed therapist. One of the worst I've seen in many years." (Dkt. #118, at 100:4–6.) Defendants allege there is "no way of investigating or verifying these extreme allegations." (Dkt. #158, at 1–2.) Plaintiffs oppose the motion, arguing that opinions as to Ms. Dahl's competency compared to others should be allowed.

This court will DENY defendants' joint MIL #7, while cautioning plaintiffs *and* Dr. Barden against the use of hyperbole, especially if it goes beyond the substance of the actual opinions in his report. Still, expert witnesses may comment on Dahl's professional competency within the bounds of courtroom decorum and excluding ad hominem attacks or the use of hyperbole.

8. **Motion to preclude Dr. Christopher Barden and the plaintiffs from discussing before the jury other false memory lawsuits or any sanctioning or firing of Dr. Bessel Van Der Kolk, Dr. Bennett Braun, and opinions regarding what "knowledge" Katherine Dahl should have of other therapists (dkt. #159)**

Defendants seek to preclude testimony or argument on false memory lawsuits and the sanctioning or firing of Drs. Bessel van der Kolk, Bennett Braun, Elizabeth Loftus, and others. First, defendants argue that mentioning Dr. van der Kolk would be unfairly prejudicial, because there is no evidence that Dahl utilized Dr. van der Kolk's teaching (Dkt. #159, at 4.) Second, defendants similarly argue that there is zero evidence that Dahl or anyone in this matter has relied upon Dr. Braun's works. Third, Defendants argue that

Dr. Barden's opinion that all competent psychotherapists are aware of the international news of Dr. Braun's recovered memory therapy malpractice case is solely based on his knowledge of the existence of 25-year-old news stories. Finally, defendants argue that it is speculative to believe that Dahl should have been aware of Dr. Elizabeth Loftus or should have read her book.

Plaintiffs oppose this motion to the extent it seeks to exclude background information regarding false memory *studies* pertaining to Drs. van der Kolk, Braun, and Loftus. First, plaintiffs state that they may "track some of Ms. Dahl's methods and ideas used with [LR]" to Dr. van der Kolk. (Dkt #181, at 5–6.) Specifically, Barden intends to testify Dr. van der Kolk has published a book on psychology that should not be relied on by professionals, but which Dahl has read. *Id.* Second, plaintiffs state that they will seek to examine defendants' witnesses on their "general knowledge" of the "major misdeeds" of Dr. Braun, because knowing about incompetence in the field of therapy is essential to a proper standard of care. (*Id.*; dkt #182, ¶ 9.) Third, plaintiffs plan to examine Dahl's lack of knowledge about Dr. Loftus, who as noted at least Barden purports to be a preeminent psychologist, to show her inability to understand how to practice within the proper standard of care. (Dkt #181, at 6–7.) Otherwise, plaintiffs represent they do not otherwise intend to discuss lawsuits or therapists who have been sanctioned.

This court will GRANT the motion to the extent that no expert witness will be allowed to cite any legal case or equate this case to a single, sensationalized case, just as no expert will offer any legal opinions, all of which are reserved to the court. Otherwise, the court will RESERVE on defendants' joint MIL #8 pending discussion at the FPTC. Still,

16

since Dahl apparently identified Dr. Van der Kolk as "one of the foremost researchers on trauma," and testified that she read a book of his (Dkt. #182-3, at 229:2–230:4), plaintiffs would appear within the bounds of relevance to introduce evidence that Dahl's methods reflect Dr. van der Kolk's methods.  However, no party or expert appears to rely on Dr. Braun's his methods, making any discussion of those methods or outcomes to be more likely to confuse or unfairly prejudice the jury.  Fed. R. Evid. 403.  Finally, because Dr. Barden seems to rely on Dr. Loftus's work, her methods can be discussed by him and discussed with the other experts or therapists to the extent relevant.  Before adopting these preliminary rulings, however, the court wants to discuss the appropriate parameters for their introduction and use at trial.

9. **Motion to preclude the plaintiffs from arguing or insinuating that a finding for the plaintiffs will not affect Katherine Dahl's license or in any way discussing Katherine Dahl's license or suggesting that she committed a licensing violation (dkt. #160)**

Defendants seek to preclude plaintiffs from arguing, insinuating, or otherwise suggesting in any way that a finding of negligence against Dahl will not affect her clinical social work license in Wisconsin. (Dkt. #160, at 1–2.)  Defendants further seek to prohibit Dr. Barden from testifying that Dahl's license should be suspended or revoked in any way. (*Id.*)  Finally, defendants seek to prohibit Dr. Barden from testifying that Dahl may have practiced therapy on LR in Minnesota in violation of her license's jurisdictional requirements.  (*Id.*, at 2–3.)

Plaintiffs agree that neither party should comment on how, if at all, this lawsuit may affect Dahl's professional licensure.  However, they argue that licensure requirements are

17

relevant to the standard of care. (Dkt. #181, at 7.) Plaintiffs point to Wisconsin Administrative Code Chapter Marriage and Family Therapy, Professional Counseling, and Social Work Examining Board (MPSW) 20 as providing licensure requirements relevant to the standard of care that encompasses Dahl's use of hypnotic-like procedures, pointing out that plaintiffs' expert based his opinion that Dahl was negligent in part upon professional standards, including Wisconsin Administrative Code Chapter MPSW 20.

The court will GRANT defendants' joint MIL #9. First, the parties may not comment on or speculate about this trial's effect one way or the other on Dahl's license to provide therapy in Wisconsin, as that is not an issue for the jury. Second, no expert, including Dr. Barden, may opine on what should happen with regard to Dahl's Wisconsin license, or even administrative sanctions, for the same reason. Finally, Dr. Barden should not comment on the jurisdictional licensure implications of any alleged therapy used on LR in Minnesota, as that is not material to the negligence standard of care in this proceeding. However, Dr. Barden is not precluded from discussing his understanding of accepted professional guidelines with respect to the proper standard of care to the extent discussed in his report.

10. **Motion to preclude the plaintiffs from discussing before the jury the purpose of liability insurance (dkt. #161)**

Defendants seek to preclude the plaintiffs from discussing before the jury the purpose of liability insurance. Plaintiffs do not oppose the motion, so the court will GRANT defendants' joint MIL #10 as unopposed.

18

11. **Motion to prohibit testimony regarding Dr. Barden's success in unrelated cases (dkt. #162)**

Defendants seek to preclude Dr. Barden from testifying to his alleged record of success in other cases as an expert witness or plaintiffs' attorney. (Dkt. #162, at 2.) Since plaintiffs do not oppose this motion (nor could they do so in good faith), the court will also GRANT defendants' joint MIL #11 as unopposed.

12. **Motion to prohibit Dr. Barden's irrelevant criticisms and non-causal criticisms of Katherine Dahl (dkt. #163)**

Defendants ask the court to preclude Dr. Barden from criticizing: (1) Dahl's treatment of LR before August 2017; and (2) Dahl's alleged lack of investigation/decision to report potential abuse to the pertinent authorities. (Dkt. #163, at 2.) Plaintiffs not only state they and defendants "are on similar pages here," (dkt. #181, at 8), they themselves seek in their MIL #3 to exclude "[e]vidence regarding the quality of care that Defendant Dahl gave to [LR] prior to January 1, 2017," although defendants curiously opposed it. Because it is not clear where the parties agree and disagree, the court will also RESERVE ruling on defendants' MIL #12 until the FPTC.

13. **Defendants' joint motion for sequestration of witnesses during trial (dkt. #164)**

Defendants seek an order that "all witnesses," including Dr. Barden, should be excluded from the courtroom so that they cannot hear other witnesses' testimony. (Dkt. #164, at 2.) Federal Rule of Evidence 615 requires that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony," subject to several exceptions. However, the court will RESERVE on defendants' joint MIL #13

19

until the FPTC.

Although plaintiffs say they do not disagree, and even go so far as to request sequestration of "everyone else," including party representatives, plaintiffs also argue in response to other motions that Dr. Barden may have relevant, rebuttal testimony. Generally, if a party requests sequestration, this court will order it as to all witnesses *except*: (1) parties; (2) a party representative (for business entities); and (3) expert witnesses. Thus, the parties should be prepared to discuss at the FPTC whether sequestration is appropriate beyond the court's normal practice.

14. **Regarding the *Rooker-Feldman* Doctrine (dkt. #165)**

Defendants state they "cannot request that the Court dismiss Plaintiffs' claims based on preclusionary principles." (Dkt. #165, at 1.) Plaintiffs agree. (Dkt. #181, at 9.) Since neither party seeks that relief here, the "motion" is DENIED as moot.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motions in limine (dkt. #148) are GRANTED IN PART, DENIED IN PART, and RESERVED IN PART as set forth above.

2) Defendants' motion to exclude expert testimony (dkt. #136) is DENIED.

3) Defendants' motions in limine (dkt. ##152–165) are GRANTED IN PART, DENIED IN PART, and RESERVED IN PART as set forth above.

Entered this 28th day of June, 2023.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge